HOOPA VALLEY TRIBE,
et al., Plaintiffs,

v.

The UNITED STATES, Defendant
and Third–Party Plaintiff,

v.

Yurok Tribe, Third–Party Defendant.

No. 08–72L.

United States Court of Federal Claims.

March 25, 2009.

Thomas P. Schlosser, Morisset, Schlosser & Jozwiak, Seattle, Washington, for Plaintiff.

Sara E. Costello, with whom were Ronald J. Tenpas, Assistant Attorney General, and Devon Lehman McCune, Natural Resources Section, U.S. Department of Justice, Washington, D.C., Scott Bergstrom, Department of the Interior, of Counsel, for Defendant.

Jonathan L. Abram, with whom was Audrey E. Moog, Hogan & Hartson LLP, Washington, D.C., for Third–Party Defendant.

### OPINION AND ORDER

WHEELER, Judge.

This case arises from the Hoopa–Yurok Settlement Act, 25 U.S.C. § 1300i, *et seq.* (2006) ("the Act"), legislation passed by Congress in 1988 to resolve longstanding issues regarding the ownership, management, and revenue-sharing of a former joint reservation (the "Joint Reservation") inhabited by the Hoopa Valley Tribe and the Yurok Tribe. Certain members of the Hoopa Valley Tribe, as well as the Tribe itself acting in *parens patriae,* filed this suit challenging the Department of Interior's ("DOI's") distribution to the Yurok Tribe of certain monies from a trust fund created by the Act. Defendant has filed a third-party complaint against the Yurok Tribe, seeking judgment against the Yurok if the Court determines that the United States mistakenly disbursed the funds.

The case is before the Court on motions filed by all three parties: Plaintiffs' motion for partial summary judgment under Rule 56(c) of the Court of Federal Claims ("RCFC"); Defendant's motion to dismiss for lack of jurisdiction under RCFC 12(b)(1) or, in the alternative, for summary judgment under RCFC 56(c); and Third–Party Defendant's motion to dismiss the third-party complaint under RCFC 12(b)(6) or, in the alternative, for summary judgment under RCFC 56(c). For the reasons stated below, the Court finds that Plaintiffs lack standing to assert their claim. Accordingly, Defendant's motion for summary judgment is GRANTED, Plaintiffs' motion for partial summary judgment is DENIED, and Third–Party Defendant's motion is DISMISSED as moot.

*Background*

In 1876, President Grant set aside a 12–mile square tract of land in Northern California on the Trinity River before it joins the Klamath River as the Hoopa Valley Indian Reservation. *Short v. United States,* 202 Ct.Cl. 870, 486 F.2d 561, 562 (1973) (herein *"Short I"*). "Most but not all of the Indians of the tract, called the Square, were and have been Hoopa Indians." *Id.* The executive order that created this reservation did not identify any Indian tribe by name, nor did it "intimate[ ] which tribes were occupying or were to occupy the reservation." *Id.* at 563. In 1891, President Harrison committed additional lands by executive order, creating "an enlarged, single reservation incorporating without distinction its added and original tracts upon which the Indians populating the newly-added lands should reside on an equal footing with the Indians theretofore resident upon it." *Id.* at 567. Under this executive order, the boundaries of the Hoopa Valley Reservation were extended to include an adjoining one-mile wide strip of the Klamath River, from the confluence of the two rivers to the Pacific Ocean about 45 miles away. *Id.* at 562. Most of the Indians of the added tract, called the Addition, were and have been Yurok Indians, also known as Klamaths. *Id.* The Hoopa, the Yurok, and members of other tribes shared this single, enlarged reservation, the Joint Reservation, from 1891 to the late twentieth century.

The Joint Reservation was rich in timber resources and began to produce substantial revenues in the mid-twentieth century. *Id.* The United States, through the Secretary of the Interior, administered these revenues as trustee of the beneficial owners. *Id.* In 1950, the Hoopa Valley Indians established an organization known as the Hoopa Valley Tribe, whose membership excluded the Yurok. *Id.* "Beginning in 1955, the Secretary of the Interior, pursuant to requests by the Hoopa Valley Tribe's Business Council, distributed

the revenues from the timber sales annually in per capita payments to the Indians of the official roll of the Hoopa Valley Tribe, to the exclusion of the Indians of the Addition." *Short v. United States*, 228 Ct.Cl. 535, 661 F.2d 150, 152 (1981) (citation omitted) (herein *Short II* ). "From March 27, 1957 to June 30, 1974, $23,811,963.75 in tribal or communal monies was distributed per capita to the [Hoopa Valley] Tribe's individual members." *Short v. United States*, 12 Cl.Ct. 36, 41 (1987) (herein *Short III* ).

In 1963, individual Indians who were excluded from the Secretary's distribution, comprised mostly of Yurok, brought suit against the United States, as trustee and administrator of the timber resources of the Joint Reservation, "seeking their share of the revenues the government had distributed to individual Indians of the Reservation." *Short II*, 661 F.2d at 152. In the first major decision in the *Short* case, the Court of Claims held that "the Square and the Addition together constituted a single reservation, that all the Indians of that Reservation were entitled to share in all of its revenues that were distributed to individual Indians (including the timber revenues from the Square), and the plaintiffs who were Indians of the Reservation were entitled to recover the monies the government withheld from them." *Id.* (citation omitted).

However, the Bureau of Indian Affairs ("BIA") continued to distribute the timber revenues only to enrolled Hoopa Valley Tribe members. *See Short v. United States*, 28 Fed.Cl. 590, 591 (1993) (herein *Short IV* ). BIA did, however, limit the amount of the revenue distributions to the Hoopa Valley Tribe after *Short I*. "[T]he BIA began to distribute only thirty percent of the unallotted Reservation income because it estimated that Hoopa Valley Tribe members comprised thirty percent of the Indians of the Reservation." *Id.* The BIA retained the remaining seventy percent in an escrow fund, which came to be known as the " 'Short escrow fund' or the 'seventy percent fund.' " *Id.* The escrow fund grew to over $60 million by the time the Court decided *Short VI* in 1993. *See id.*

Some 25 years after the *Short* litigation began, Congress sought a resolution to the issue of ownership of the Joint Reservation and the related timber revenues by passing the Hoopa–Yurok Settlement Act. The Act explicitly preserved the final judgments of the Short cases, *see* 25 U.S.C. § 1300i–2 (2006), but it also sought to resolve the decades of dispute between the Hoopa Valley Tribe and the Yurok by partitioning the Joint Reservation into the Hoopa Valley Reservation (the Square) and the Yurok Reservation (the Addition). *Id.* at § 1300i–1(b), (c) (2006). Although the Hoopa and Yurok peoples had shared a Joint Reservation for nearly a century, the area allocated to the Hoopa, the Square, was far richer in timber and other resources than the Addition allocated to the Yurok Indians.

The Act required the Secretary of the Interior to establish a "Settlement Fund" (the "Fund"), comprised of the *Short* escrow funds that had been set aside for the non-Hoopa residents, along with other monies. *See id.* at § 1300i–3(a) (2006). The Act expressly delineated the Tribes' respective entitlements to the Fund. Congress gave to the Hoopa Valley and Yurok Tribes percentages of the Fund based upon their membership and the number of individuals entitled to share in the Fund. *See id.* at § 1300i–3(c), (d). Individuals not electing membership in either Tribe, could receive a lump sum payment of $15,000. *Id.* at § 1300i–5(d) (2006). The Act specified that any remainder in the Fund after these distributions to the Hoopa and certain individuals was also to be held in trust for the Yurok. *Id.* at § 1300i–6(a) (2006).

The Hoopa Valley Tribe sought its allocated share of the Fund. Before it could do so, the Act required that the Tribe submit a waiver of "any claim ... against the United States arising out of the provisions of [the Act]" and consent to the addition of the Hoopa escrow to the Fund and its use as payment to the Yurok. *Id.* at § 1300i–1(a)(2)(A). On November 28, 1988, the Hoopa Valley Tribe passed a resolution waiving "any claim the Hoopa Valley Tribe may have against the United States arising out of the provisions of the Hoopa–Yurok Settlement

Act." Pls.' Am. Compl. ¶ 34; 53 Fed. Reg. 49,361-01 (Dec. 7, 1988). Subsequently, the DOI distributed to the Hoopa Valley Tribe its full allocated distribution from the Fund. The Hoopa Valley Tribe received, including certain interim payments, approximately $34 million. Pls.' Mot. for Partial Summ. J. Ex. 13, App. 152-53 (Apr. 2, 2008).

Regarding the Yurok, the Act required a similar waiver before the tribe could receive any monies from the Fund. 25 U.S.C. § 1300i–1(c)(4) ("[A]pportionment of funds to the Yurok Tribe as provided in [the Act] ... shall not be effective unless and until the Interim Council of the Yurok Tribe has adopted a resolution waiving any claim such tribe may have against the United States arising out of the provisions of this subchapter."). On March 10, 1992, the Yurok Interim Council brought suit in the Claims Court asserting "claims for just compensation under the Fifth Amendment to the Constitution of the United States for the taking of compensable property and property rights of the Yurok Tribe by the United States under the Hoopa–Yurok Settlement Act of 1988." Pls.' Mot. Ex. 17, App. 170 (*Yurok Indian Tribe v. United States,* No. 92–173, Compl. ¶ 1 (Cl. Ct. Mar. 10, 1992)). Shortly thereafter, the Yurok Interim Council passed Resolution No. 93–61, stating, "[t]o the extent which the Hoopa–Yurok Settlement Act is not violative of the rights of the Yurok Tribe or its members under the Constitution of the United States or has not effected a taking without just compensation of vested Tribal or individual resources, or rights" with respect to the Square, any claim against the United States arising from the Act is waived. *See* Pls.' Mot. Ex. 22, App. 183–84. The Yurok's claim was ultimately consolidated with two other actions, in which the plaintiffs argued that the Act effected a Fifth Amendment taking of their property interests in the Hoopa Valley Reservation. *See Karuk Tribe of Cal. v. United States,* 41 Fed.Cl. 468, 469 (1998), aff'd *Karuk Tribe of Cal. v. Ammon,* 209 F.3d 1366 (Fed.Cir.2000). Ultimately, this Court granted the motion and cross-motions for summary judgment of the United States and the defendant-intervenor, and directed the clerk to dismiss the complaint. *Id.* at 477.

Upon conclusion of the *Karuk* litigation, the Secretary of the Interior submitted a report to Congress, and the BIA gave testimony before the Senate Indian Affairs Committee, describing the claim against the United States and providing recommendations on how to proceed. *See* 25 U.S.C. § 1300i–11(c) (2006); Pls.' Mot. Exs. 24, 25. With respect to the Hoopa, DOI concluded that it had "received its portion of the benefits under the [A]ct and is not entitled to further distributions" from the Fund. Pls.' Mot. Ex. 25, App. 251–52. DOI informed Congress that, because the Yurok litigated its takings claims rather than waiving them, the Yurok did not meet the Act's condition precedent in order to receive its share of the Settlement Fund or other benefits. *Id.* at App. 249. DOI explained that it did not believe the Act contemplated such a result, and recommended, among other things, that Congress consider the need for additional legislation to address any issue regarding entitlement to the Fund and to fulfill the Act's intent. *Id.* at App. 252.

Meanwhile, DOI, as trustee, continued to hold the Fund as late as 2007. Both tribes requested that the DOI evaluate whether it might distribute such funds administratively. *Id.* at Ex. 30, App. 372. After review, on March 1, 2007, Ross O. Swimmer, Special Trustee for American Indians, wrote a letter to the chairpersons of the Hoopa Valley and Yurok Tribes informing them of the DOI's conclusion that it would distribute the Fund to the Yurok, consistent with the provisions of the Act, if the Yurok were to submit a new waiver of claims. *Id.* at App. 374. On March 21, 2007, the Yurok Tribe Council submitted to the Special Trustee, Resolution No. 07–037, an unconditional waiver of any claims it may have against the United States arising under the Act. *See id.* at Ex. 32, App. 376–77. In a letter of the same day, the Special Trustee accepted the waiver and stated that DOI intended to distribute the balance of the Fund held pursuant to that Act to the Yurok. *Id.* at Ex. 31, App. 375. In April 2007, the United States released the Fund to the Yurok Tribe. *See id.* at Ex. 38, App. 400–02. Accordingly, the United States distributed approximately $80 or $90 million to

the Yurok Tribe. *Compare* Hr'g Tr. 15 (Mar. 4, 2009) *with id.* at 28. The Yurok promptly began preparations to distribute the funds per capita to its members pursuant to the procedures of the Yurok Constitution.

On March 26, 2007, the Hoopa Valley Tribe filed a notice of appeal of the March 1 and 21 letters with the Interior Board of Indian Appeals ("IBIA"). Def.'s Mot. to Dismiss, or in the Alt., for Summ. J. Ex. A (July 22, 2008). On March 27, 2008, the IBIA held that it lacked jurisdiction to hear the Hoopa appeal. *Id.* at 1. Specifically, the IBIA held that none of the jurisdictional bases the Hoopa asserted—43 C.F.R. § 4.2(b)(2)(ii), 25 C.F.R. § 2.4(e), and 25 C.F.R. Part 1200—provided a basis for the IBIA's jurisdiction. Def.'s Mot. 1–3.

On February 1, 2008, Plaintiffs filed the present action challenging the distributions to the Yurok Tribe. This case was assigned to Senior Judge Lawrence S. Margolis on the same day. Plaintiffs filed an Amended Complaint on March 11, 2008. Soon afterwards, Plaintiffs filed a motion for partial summary judgment, requesting "judgment as a matter of law that the United States is liable for breach of fiduciary obligation resulting from its discriminatory distribution of the proceeds of timber sales and management of the former Joint Hoopa Valley Indian Reservation to fewer than all of the Indians of the Reservation for whom the Indian trust funds were collected." Pls.' Mot. 2. This case was reassigned to Judge Thomas C. Wheeler on April 11, 2008.

On July 22, 2008, Defendant filed a combined motion to dismiss, or in the alternative for summary judgment, and response in opposition to Plaintiffs' motion for summary judgment. About one month later, Defendant filed a third-party complaint naming the Yurok Tribe as a Third–Party Defendant, and seeking judgment against the Yurok if the Court determined that the United States mistakenly disbursed the settlement funds. Def.'s Third–Party Compl. ¶ 14 (Aug. 26, 2008). Plaintiffs filed their response to Defendant's motion and reply in support of their own motion on September 9, 2008, and Defendant replied on October 1, 2008. On October 3, 2008, Plaintiffs filed a motion requesting an in-person hearing regarding Plaintiffs' and Defendant's cross-motions. The Court granted Plaintiffs' motion for a hearing on October 27, 2008, but permitted the Yurok Tribe to respond to the cross-motions before such a hearing would be held.

The Yurok Tribe moved to dismiss Defendant's Third–Party Complaint or, in the alternative, for entry of summary judgment in favor of the Yurok on November 7, 2008 and filed its response to the cross-motions on November 21, 2008. On December 8, 2008, both Plaintiffs and Defendant responded to Yurok Tribe's motion, and the Hoopa Valley Tribe replied to the Yurok Tribe's response to the cross-motions. The Yurok Tribe replied in support of its motion on January 9, 2009. On February 27, 2009, Plaintiffs sought leave to file additional exhibits to its motion for partial summary judgment. The Court heard oral argument on Plaintiffs' motion for partial summary judgment, Defendant's cross-motion, and the Yurok Tribe's motion on March 4, 2009. During this hearing, the Court granted Plaintiffs' motion for leave to file additional exhibits.

## Discussion

### A. *Standard of Review*

Summary judgment under RCFC 56 is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1323 (Fed.Cir.2001) (citation omitted). The benefit of all presumptions and factual inferences runs in favor of the non-moving party when a court reviews a motion for summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quotation omitted); *Lathan Co., Inc. v. United States,* 20 Cl.Ct. 122, 125 (1990) (citation omitted). The party moving for summary judgment bears the initial burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant must come forward with specific facts that give rise to genuine

issues of material facts. RCFC 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quotation omitted). A fact is "material" if it has the potential to affect significantly the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" dispute occurs when a reasonable trier of fact could find in favor of the non-moving party based on the evidence presented. *Id.* If the non-moving party produces sufficient evidence to raise a genuine issue of fact material to the outcome of the case, the motion for summary judgment should be denied. *See id.*

**B. *Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment***

**1. *Plaintiffs Lack Standing to Pursue Their Claims.***

Plaintiffs, who previously have received their full entitlement of the Fund, lack standing to pursue their claims, making summary judgment under RCFC 56(c) for the Defendant appropriate. "[T]he doctrine of standing goes to the heart of the constitutional separation of powers because it defines the contours of the judicial power." *Smith v. United States*, 58 Fed.Cl. 374, 375 (Fed.Cl. 2003), aff'd 110 Fed.Appx. 898 (2004). "It 'serves to identify those disputes which are appropriately resolved through the judicial process.'" *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). "In the absence of standing the court has no jurisdiction to decide the merits of a claim." *Aldridge v. United States*, 59 Fed.Cl. 387, 389 (Fed.Cl. 2004) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)).

The Supreme Court, in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), explained that "the irreducible constitutional minimum of standing contains three elements." The plaintiff must first have suffered an " 'injury in fact'— an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.' " *Id.* (citations and quotations omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Second, a causal connection between the injury and the conduct about which the plaintiff complains must exist. *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130 (quotation omitted). Third, it must be likely that the injury will be redressed by a favorable decision. *Id.* at 561, 112 S.Ct. 2130 (quotation omitted). The Supreme Court added that these elements are "not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Id.* "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but is ordinarily 'substantially more difficult' to establish." *Id.* at 562, 112 S.Ct. 2130 (citation omitted). Furthermore, "[t]he party invoking federal jurisdiction bears the burden of establishing standing." *NCLN20, Inc. v. United States*, 82 Fed.Cl. 103, 118 (2008) (citing *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130).

In the present case, "Plaintiffs allege they have suffered a concrete and actual injury by virtue of the fact that the members of the Hoopa Valley Tribe are Indians of the Reservation, and they have suffered damages as a result of the United States' unauthorized and discriminatory per capita distribution to members of the Yurok Indian Tribe from an account that was held in trust for them as well." Pls.' Resp. to Def.'s Mot. 23 (Sept. 10, 2008) (citation omitted). Plaintiffs argue that the Hoopa Valley Tribe members received "nothing" while Yurok members each received $15,652.89. *Id.* at 23 (citation omitted). Plaintiffs contend that, under the *Short* cases, if the United States made additional payments from the Joint Reservation, all "Indians of the Reservation" must be benefitted by those payments. *Id.* (citation omitted). Plaintiffs argue that the individual Hoopa members are Indians of the Reservation and thus beneficiaries of the timber profits held in trust by the United States. *Id.* at 23–24. Thus, Plaintiffs conclude that the individual members of the Hoopa Valley Tribe have standing to pursue damages for a discriminatory release of the Funds. *Id.* at 24 (citation omitted).

Based upon the plain meaning of the Act, however, the individual Plaintiffs do not have

standing to bring claims in this matter because they have already received their full entitlement to the Fund and thus have no "injury in fact."[1] As is noted above, Congress, in the Act, specifically delineated who was entitled to receive a portion of the Fund. Congress gave to both the Hoopa Valley Tribe and the Yurok Tribe certain percentages of the Fund based upon their tribe memberships. 25 U.S.C. § 1300i–3(c), (d). Individuals not electing membership in either Tribe could receive a lump sum of $15,000. *Id.* at § 1300i–5(d). The Act specified that any remainder in the Fund after these distributions was also to be held in trust for the Yurok. *Id.* at § 1300i–6(a).[2] The Hoopa Valley Tribe ultimately received more than $34 million from the Fund, the amount determined to be Hoopa's entitlement pursuant to the Act. Pls.' Mot. Ex. 13, App. 152–53.

Thus, Plaintiffs cannot show that an "invasion of a legally protected interest" occurred in this matter to establish an "injury in fact." The Hoopa Valley Tribe already received its share of the Fund in 1991; only the Yurok were entitled to monies remaining in the Fund in 2007. In short, Plaintiffs already have received the amount of the Fund to which they are entitled, and could not be injured by distribution of monies to which they have no right.

Further, Plaintiffs, as individual Hoopa Valley Tribe members, had no right to an individual entitlement from the Fund. Congress, in the Act, recognized individual entitlements only for those Indians of the former Joint Reservation who chose not to become a member of either Tribe. 25 U.S.C. § 1300i–5(d). As the Plaintiffs in this case are members of the Hoopa Valley Tribe, *see* Am. Compl. ¶ 3, they are ineligible for a lump sum payment under the Act and could thus only benefit from the monies previously distributed to the Hoopa Valley Tribe. Simply put, the Act provides no mechanism for individual Hoopa Valley Tribe members to receive payment directly from the United States. Thus, Plaintiffs had no right to receive an individual entitlement from the United States in 2007, and could not be injured by the distribution of the Fund to the Yurok.[3]

### 2. *Defendant's Additional Arguments*

In its cross-motion, Defendant also argues that: (a) the Act expressly precludes Plaintiffs' claims; (b) Plaintiffs' failed to meet the requirements of Indian Tucker Act; (c) Plaintiffs' arguments regarding the Yurok Interim Council and the sufficiency of the Yurok Tribe's 2007 claim waiver lack merit; and (d) Plaintiffs' claims regarding the *Short* litigation lack merit. Def.'s Mot. 2. As the Plaintiffs have no standing to pursue their claim, Defendant's additional arguments are moot and need not be addressed.

### C. *Plaintiffs' Motion for Summary Judgment*

Plaintiffs filed a Motion for partial summary judgment, arguing that a purely legal question exists as to whether the United

---

1. Plaintiffs concede that the Hoopa Valley Tribe has no residual entitlement to the Fund. Pls.' Mem. in Supp. of Mot. for Partial Summ. J. 3 n. 3 (Apr. 2, 2008) ("[T]he Hoopa Plaintiffs ... do not contest the Interior Department's conclusion in 2002 that the Hoopa Valley *Tribe* is not entitled to further distribution under the Settlement Act.") (emphasis in original).

2. Congress estimated the equitable distribution of the Fund to be roughly one-third to the Hoopa Valley Tribe and then one-third plus the remainder (after specified individual payments) to the Yurok Tribe. Pls.' Mot. Ex. 6, App. 97, 102.

3. Defendant also argues that Plaintiffs have no standing by virtue of their waiving of claims related to the Act by electing membership in the Hoopa Valley Tribe. Def.'s Mot. 13 (citing 25 U.S.C. § 1300i–5(b)(4)). However, the subsection of the Act relied upon by Defendant appears to apply only to those individuals who where on the Settlement Roll and elected to become a member of the Hoopa Valley Tribe in accordance with the Act. *See* 25 U.S.C. § 1300i–5(b)(1) ("Any person on the Settlement Roll ... may elect to be, and, upon such election, shall be entitled to be, enrolled as a full member of the Hoopa Valley Tribe."); 25 U.S.C. § 1300i–5(b)(4) ("Any person making an election under this subsection shall no longer have any right or interest whatsoever in ... the Settlement Fund."). As the Plaintiffs were already members of the Hoopa Valley Tribe before the passing of the Act, they neither were on the Settlement Roll nor elected to become Hoopa Valley Tribe members in accordance with the Act. The waiver of 25 U.S.C. § 1300i–5(b)(4) thus does not apply to the Plaintiffs.

States breached its trust responsibility. Pls.' Mot. 1. Given the Court's ruling that the Plaintiffs have no standing to pursue their claim, Plaintiffs' motion is without merit.

### D. *Third–Party Defendant Yurok Tribe's Motion to Dismiss*

Third–Party Defendant Yurok Tribe filed a motion to dismiss the United States' Third–Party Complaint contending that trust law precludes contingent recovery of the Yurok Fund from the Yurok Tribe or its members. Third–Party Def.'s Mot. to Dismiss or for Summ. J. 1 (Nov. 7, 2008). As the Plaintiffs have no standing to pursue their claim, the Yurok Tribe's motion is dismissed as moot.

### Conclusion

Based upon the foregoing, Defendant's motion for summary judgment is GRANTED; Plaintiffs' motion for partial summary judgment is DENIED; and Third–Party Defendant's motion is DISMISSED as moot. The Clerk is directed to enter judgment for the Defendant.

IT IS SO ORDERED.