# United States Court of Appeals for the Federal Circuit

2009-5084


HOOPA VALLEY TRIBE on its own behalf, and in its capacity
as parens patriae on behalf of its members,
OSCAR BILLINGS, BENJAMIN BRANHAM, JR.,
WILLIAM F. CARPENTER, JR., MARGARET MATTZ DICKSON,
FREEDOM JACKSON, WILLIAM J. JARNAGHAN, SR.,
JOSEPH LEMIEUX, CLIFFORD LYLE MARSHALL,
LEONARD MASTEN, JR., DANIELLE VIGIL-MASTEN,
LILA CARPENTER and ELTON BALDY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant/Third Party Plaintiff-
Appellee,

v.

YUROK TRIBE,

Third Party Defendant-Appellee.


Thomas P. Schlosser, Morisset, Schlosser & Jozwiak, of Seattle, Washington, argued for plaintiffs-appellants. With him on the brief was Thane D. Somerville.

Mary Gabrielle Sprague, Attorney, Environment & Natural Resources, Appellate Section, United States Department of Justice, of Washington, DC, argued for defendant/third party plaintiff-appellee. With her on the brief was John C. Cruden, Acting Assistant Attorney General.

Jonathan L. Abram, Hogan & Hartson LLP, of Washington, DC, argued for third party defendant-appellee.

Appealed from: United States Court of Federal Claims

Judge Thomas C. Wheeler

# United States Court of Appeals for the Federal Circuit

2009-5084

HOOPA VALLEY TRIBE on its own behalf, and in its capacity as parens patriae on behalf of its members, OSCAR BILLINGS, BENJAMIN BRANHAM, JR., WILLIAM F. CARPENTER, JR., MARGARET MATTZ DICKSON, FREEDOM JACKSON, WILLIAM J. JARNAGHAN, SR., JOSEPH LEMIEUX, CLIFFORD LYLE MARSHALL, LEONARD MASTEN, JR., DANIELLE VIGIL-MASTEN, LILA CARPENTER and ELTON BALDY,

                                      Plaintiffs-Appellants,

v.

UNITED STATES,

                                        Defendant/Third Party Plaintiff-Appellee,

v.

YUROK TRIBE,

                                        Third Party Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 08-CV-072, Judge Thomas C. Wheeler.

_____

DECIDED: March 9, 2010

_____

Before LINN, FRIEDMAN, and MOORE, Circuit Judges.

Opinion for the court filed by Circuit Judge MOORE. Dissenting opinion filed by Circuit Judge FRIEDMAN.

MOORE, Circuit Judge.

The Hoopa Valley Tribe, on its own behalf and acting as parens patriae, and twelve members of the Hoopa Valley Tribe (collectively, Hoopa Valley) appeal from a final decision of the United States Court of Federal Claims. See Hoopa Valley Tribe v.

<u>United States</u>, 86 Fed. Cl. 430 (2009). The Court of Federal Claims held that Hoopa Valley lacks standing to challenge the distribution of trust funds to the Yurok Tribe, and the court entered judgment in favor of the government. For the reasons set forth below, we agree that Hoopa Valley lacks standing but vacate and remand with instructions to dismiss Hoopa Valley's complaint without prejudice.

BACKGROUND

This case relates to the government's distribution of revenue derived from an Indian reservation. In 1876, President Grant set aside a square tract of land in Northern California as the Hoopa Valley Indian Reservation, which was inhabited mostly by Hoopa Valley Indians. President Harrison extended this reservation in 1891 to include an additional tract of land that was inhabited mostly by Yurok Indians. Both tribes, as well as other individuals, shared this enlarged reservation (the Joint Reservation), which was rich in timber resources and produced substantial revenue. The United States, through the Department of the Interior (DOI), administered this revenue as trustee of the beneficiaries and began distributing the revenue by 1955. Importantly, DOI distributed the revenue only to enrolled members of the Hoopa Valley Tribe, which the Hoopa Valley Indians formed in 1950.

DOI's discriminatory distribution of revenue prompted what became known as the <u>Short</u> litigation. In 1963, individual Indians not sharing in the revenue, comprised mostly of Yurok Indians, sued the United States for breach of fiduciary duty. The United States Court of Claims ruled in favor of these Indians, holding that the Joint Reservation was "an enlarged, single reservation incorporating without distinction its added and original tracts upon which the Indians populating the newly-added lands should reside on an

equal footing with the Indians theretofore resident upon it." Short v. United States, 486 F.2d 561, 567 (Ct. Cl. 1973) (Short I). After Short I, DOI—through its Bureau of Indian Affairs—distributed 30% of the unallotted revenue to enrolled Hoopa Valley Tribe members because these members comprised about 30% of all potential "Indians of the Reservation." DOI retained the remaining 70% in an escrow fund.

The Short litigation spanned several more years and resulted in numerous judicial opinions. For example, in 1981, the Court of Claims remanded for a determination of which plaintiffs constituted "Indians of the Reservation." See Short v. United States, 661 F.2d 150, 159 (Ct. Cl. 1981) (Short II). In 1983, we upheld the trial court's standards for making this determination, emphasizing that "all we are deciding are the standards to be applied in determining those plaintiffs who should share as individuals in the monies from the Hoopa Valley Reservation unlawfully withheld by the United States from them (from 1957 onward)." Short v. United States, 719 F.2d 1133, 1143 (Fed. Cir. 1983) (Short III). We also clarified that our decision "will obtain only for the years until final judgment, and for the years to come while the situation in the Reservation remains the same subject of course to births and deaths." Id. The United States Claims Court subsequently concluded that qualified plaintiffs were entitled to "the share they would have received had the distributions been made in a non-discriminatory manner." Short v. United States, 12 Cl. Ct. 36, 41 (1987) (Short IV).

In 1988, in an effort to resolve the dispute relating to the ownership and management of the Joint Reservation, Congress passed the Hoopa-Yurok Settlement Act (the Act), Pub. L. No. 100-580, 102 Stat. 2924 (codified as amended at 25 U.S.C. § 1300i et seq. (2006)). The Act expressly preserved the entitlements established

under, and any final judgment rendered in, the <u>Short</u> cases. 25 U.S.C. § 1300i-2. But the Act also partitioned the Joint Reservation into the Hoopa Valley Reservation and the Yurok Reservation. <u>Id.</u> § 1300i-1. The Act conditioned this partition on the Hoopa Valley Tribe "adopt[ing], and transmit[ting] to the Secretary, a tribal resolution . . . waiving any claim such tribe may have against the United States arising out of the provisions of this subchapter." <u>Id.</u> § 1300i-1(a)(2)(A). Hoopa Valley passed this resolution on November 28, 1988, and the partition was effected upon publication of the resolution in the Federal Register on December 7, 1988.

Importantly, the Act established a fund (the Settlement Fund) that included all undistributed revenue from the Joint Reservation being held in escrow funds and "all accrued income thereon." <u>Id.</u> § 1300i-3(a). For purposes of distributing money from the Settlement Fund, the Act instructed DOI to create a roll (the Settlement Roll) of all persons that were Indians of the Reservation and "(A) who were born on or prior to, and living upon, October 31, 1988; (B) who are citizens of the United States; and (C) who were not, on August 8, 1988, enrolled members of the Hoopa Valley Tribe."[1] <u>Id.</u> § 1300i-4(a)(1). Under § 1300i-5, DOI gave notice to "each person eighteen years or older on such roll of their right to elect" enrollment in either the Hoopa Valley Tribe or the Yurok Tribe, subject to the satisfaction of certain criteria. Rather than elect membership in either tribe, individuals could also elect to receive a lump sum payment out of the Settlement Fund in the amount of $15,000. <u>Id.</u> § 1300i-5(d).

---

[1] All twelve individual members of the Hoopa Valley Tribe that are named plaintiffs in this case were enrolled members of the Hoopa Valley Tribe on August 8, 1988.

The Act expressly set forth other mechanisms for distributing money out of the Settlement Fund. With respect to the Hoopa Valley Tribe, the Act provided as follows:

> [T]he Secretary shall immediately pay out of the Settlement Fund into a trust account for the benefit of the Hoopa Valley Tribe a percentage of the Settlement Fund which shall be determined by dividing the number of enrolled members of the Hoopa Valley Tribe as of the date of the promulgation of the Settlement Roll, including any persons enrolled pursuant to section 1300i-5 of this title, by the sum of the number of such enrolled Hoopa Valley tribal members and the number of persons on the Settlement Roll.

Id. § 1300i-3(c). The Act conditioned payment of the Tribe's percentage of the Settlement Fund upon execution of the waiver discussed above. Id. §1300i-1(a)(2)(A) (requires "waiving any claim such tribe may have against the United States"). After Hoopa Valley passed the resolution waiving its right to bring suit against the United States with respect to provisions of the Act, DOI paid the Tribe its allotted amount from the Settlement Fund—about 40% of the Settlement Fund or about $34 million. The Act included a similar provision for the Yurok Tribe:

> the Secretary shall pay out of the Settlement Fund into a trust account for the benefit of the Yurok Tribe a percentage of the Settlement Fund which shall be determined by dividing the number of persons on the Settlement Roll electing the Yurok Tribal Membership Option pursuant to section 1300-5(c) of this title by the sum of the number of the enrolled Hoopa Valley tribal members established pursuant to subsection (c) of this section and the number of persons on the Settlement Roll, less any amount paid out of the Settlement Fund pursuant to section 1300i-5(c)(3) of this title.

Id. § 1300i-3(d). Section 1300-5(c)(3) also provided for payment of either $5,000 or $7,500 out of the Settlement Fund to individuals electing membership in the Yurok Tribe, depending on the individual's age. Lastly, under § 1300i-6(a), "[a]ny funds remaining in the Settlement Fund . . . shall be paid to the Yurok Tribe and shall be held by the Secretary in trust for such tribe."

The Act conditioned "apportionment of funds to the Yurok Tribe as provided in sections 1300i-3 and 1300-i6" on the Yurok Tribe "adopt[ing] a resolution waiving any claim such tribe may have against the United States arising out of the provisions of this subchapter." Id. § 1300i-1(c)(4). The Yurok Tribe adopted a resolution with a waiver that the United States deemed unsatisfactory, and the Yurok Tribe filed a takings claim against the United States. The Yurok Tribe ultimately lost its case, see Karuk Tribe of Cal. v. Ammon, 209 F.3d 1366 (Fed. Cir. 2000), and a substantial amount of money remained in the Settlement Fund. Hoopa Valley's suit in this case concerns the remainder of the money in the Settlement Fund.

In March 2002, DOI submitted a report and testified before the Senate Indian Affairs Committee regarding what to do with the remainder in the Settlement Fund. See 25 U.S.C. § 1300i-11(c). According to DOI, the Hoopa Valley Tribe "received their [sic] portion of the benefits as enumerated within the Act" and thus "is not entitled [to] any further portion of funds or benefits under the existing Act." J.A. 246. DOI also concluded that "the Yurok Tribe did not meet the waiver conditions of the Act and is therefore not entitled to the benefits enumerated within the Act." Id. at 247. Nevertheless, DOI recommended that the remainder should not revert to the general fund of the U.S. Treasury. Id. at 247, 282. Rather, DOI recognized that "substantial financial and economic needs currently exist within both Tribes and their respective reservations." Id. at 282. Accordingly, DOI recommended that "the Settlement Fund should be administered for the mutual benefit of both Tribes and their respective reservations, taking into consideration prior distributions to each Tribe from the Fund," and that "the monies remaining in the Settlement Fund should . . . be distributed to one

or both Tribes in some form." <u>Id.</u> DOI sought further instruction and/or legislation from Congress on this issue, but no such legislation was enacted.

In 2007, after reviewing the situation and hearing from both tribes, Ross O. Swimmer, Special Trustee for American Indians, informed both tribes that DOI would distribute the remainder in the Settlement Fund to the Yurok Tribe, provided that the Yurok Tribe submitted a new, satisfactory waiver. The Yurok Tribe complied and received the remainder in the Settlement Fund, which had grown from about $37 million to more than $80 million.

Hoopa Valley subsequently sued the United States, alleging breach of fiduciary duty arising from the distribution of the remainder in the Settlement Fund only to the Yurok Tribe. According to Hoopa Valley, the Yurok Tribe's waiver was invalid. Hoopa Valley moved for summary judgment; the government filed a motion to dismiss, or in the alternative for summary judgment. The government also filed a third-party complaint seeking judgment against the Yurok Tribe if the Court of Federal Claims concluded that the disbursement was improper. The Court of Federal Claims granted the government's motion for summary judgment on the basis that Hoopa Valley lacks standing. Specifically, the court determined that Hoopa Valley cannot show that it suffered an injury in fact. The Court of Federal Claims entered judgment in favor of the government, and Hoopa Valley appeals.

## DISCUSSION

We have jurisdiction under 28 U.S.C. § 1295(a)(3). We review the Court of Federal Claims' grant of summary judgment <u>de novo</u>. <u>Winstar Corp. v. United States</u>, 64 F.3d 1531, 1539 (Fed. Cir. 1995). Also, "[w]hether a plaintiff has standing to bring

suit is likewise a question of law, reviewed de novo." S. Cal. Fed. Sav. & Loan Ass'n v. United States, 422 F.3d 1319, 1328 (Fed. Cir. 2005). "Standing is a threshold jurisdictional issue that implicates Article III of the Constitution." Id. According to the Supreme Court, "the irreducible constitutional minimum of standing contains three elements": injury in fact, causation, and redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). With respect to the first element, "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." Id. at 560 (citations omitted) (internal quotation marks omitted). Hoopa Valley, the party invoking jurisdiction, bears the burden of establishing the elements of standing. Id. at 561.

Hoopa Valley contends that it is a beneficiary of—i.e., had a legally protected interest in—the Settlement Fund and that it was injured by DOI's distribution of the remainder in the Settlement Fund to the Yurok Tribe. According to Hoopa Valley, it is a direct beneficiary because the remainder was derived from timber resources taken from the Hoopa Valley Reservation. Furthermore, Hoopa Valley maintains that its claims "are mirror images of claims approved by this Court in the Short litigation" and that "[a]bsent valid distributions complying with the Settlement Act or other statute, the Secretary was bound to hold, invest, and administer the Settlement Fund as Indian trust funds for the benefit of all Indians of the Reservation, including the Hoopa Plaintiffs." Appellants' Br. 17–18. The government responds that the Hoopa Valley Tribe was no longer a beneficiary after it received its share of the Settlement Fund in 1991 and that individual Hoopa Valley Tribe members were never beneficiaries of the Settlement

Fund. These arguments by the government form the basis of the Court of Federal Claims' decision. See Hoopa Valley, 86 Fed. Cl. at 435–36.

We agree with the Court of Federal Claims that Hoopa Valley lacks standing because it cannot show an injury in fact. The Hoopa Valley Tribe waived any claim against the government arising from the Act, received its share of the Settlement Fund, and retained no entitlement to the remainder in the Settlement Fund. As such, at the time DOI distributed the remainder to the Yurok Tribe, the Hoopa Valley Tribe was not a beneficiary of, and had no legally protected interest in, the Settlement Fund. Moreover, Hoopa Valley's reliance on the earlier Short litigation is inapposite because entitlement to the Settlement Fund is dictated by the provisions of the Act itself, and Hoopa Valley received all of the money to which it was entitled under the Act. Thus the Hoopa Valley Tribe cannot show an injury in fact based on DOI's distribution. Likewise, individual members of the Hoopa Valley Tribe have no individual entitlement to the Settlement Fund. The Act recognized only two forms of direct distributions to individuals: (1) those individuals not electing membership in either the Hoopa Valley Tribe or the Yurok Tribe, see 25 U.S.C. § 1300i-5(d); and (2) individuals electing membership in the Yurok Tribe, see id. § 1300i-5(c)(3). Furthermore, the corresponding Senate Report explained that the Act "should not be considered in any fashion as a precedent for individualization of tribal communal assets" and should "in no way . . . be construed as any recognition of individual rights in and to the reservation or the funds in escrow." S. Rep. No. 100-564, at 2, 15 (1988). The Court of Federal Claims' summary is particularly apt: "Simply put, the Act provides no mechanism for individual Hoopa Valley Tribe members to receive payment directly from the United States." Hoopa Valley, 86 Fed. Cl. at 436. Because

we conclude that Hoopa Valley lacks standing, we do not address the government's alternative arguments, including specifically that even if the twelve members of the Hoopa Valley Tribe have standing, the Hoopa Valley Tribe lacks standing as parens patriae on behalf of its members.

Although we agree with the court's determination that Hoopa Valley lacks standing, we nevertheless believe that the Court of Federal Claims, which entered judgment in favor of the government, should have dismissed Hoopa Valley's complaint without prejudice. Indeed, the government concedes that dismissal for lack of jurisdiction is appropriate and requests that we remand for this purpose. Accordingly, we vacate the Court of Federal Claims' judgment in favor of the government and remand with instructions for the court to dismiss Hoopa Valley's complaint without prejudice.

VACATED and REMANDED

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

2009-5084

HOOPA VALLEY TRIBE on its own behalf, and in its capacity as parens patriae on behalf of its members, OSCAR BILLINGS, BENJAMIN BRANHAM, JR., WILLIAM F. CARPENTER, JR., MARGARET MATTZ DICKSON, FREEDOM JACKSON, WILLIAM J. JARNAGHAN, SR., JOSEPH LEMIEUX, CLIFFORD LYLE MARSHALL, LEONARD MASTEN, JR., DANIELLE VIGIL-MASTEN, LILA CARPENTER and ELTON BALDY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant/Third Party Plaintiff-Appellee,

v.

YUROK TRIBE,

Third Party Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 08-CV-072, Judge Thomas C. Wheeler.

FRIEDMAN, <u>Circuit Judge</u>, dissenting.

I would affirm the Court of Federal Claims' grant of summary judgment for the United States, thereby dismissing the complaint, but not on the court's ground that the appellants lack standing to bring their claims. I would affirm on the alternative ground, which the record supports, that the appellants have failed to state a claim on which relief can be granted. We may affirm the judgment of that court on any ground the record supports, whether or not that court relied upon that ground or whether the parties

asserted that ground.  See Granite Mgmt. v. United States, 416 F.3d 1373, 1378 (Fed. Cir. 2005).

I

The rationale of the Court of Federal Claims' lack-of-standing ruling is that the appellants "have already received their full entitlement to the Fund and thus have no 'injury in fact.'"  That court stated:

> The Hoopa Valley Tribe ultimately received more than $34 million from the Fund, the amount determined to be Hoopa's entitlement pursuant to the Act.
>
> Thus, Plaintiffs cannot show that an "invasion of a legally protected interest" occurred in this matter to establish an "injury in fact."  The Hoopa Valley Tribe already received its share of the Fund in 1991; only the Yurok were entitled to monies remaining in the Fund in 2007. In short, Plaintiffs already have received the amount of the Fund to which they are entitled, and could not be injured by distribution of monies to which they have no right.

Hoopa Valley Tribe v. United States, 86 Fed. Cl. 430, 436 (2009) (app. citation omitted).

The appellants, however, do not contend that the distribution to the Yurok Tribe violated the Hoopa Valley Tribe's distribution rights under the Settlement Act.  They contend that, under that Act and 25 U.S.C. § 407, the funds distributed to the Yurok Tribe were being held by the federal government as Indian trust funds, and that the distribution the Secretary of the Interior made was a breach of that trust because it violated the Settlement Act.  Although the alleged breach of trust was based on an alleged violation of the Settlement Act, that does not make the present claim any the less one for breach of trust.  As the appellants stated in their brief on the merits, "Hoopa Plaintiffs seek recovery of damages resulting from a breach of trust committed by the United States."  The fact that the Hoopa Valley Tribe may have received all it is entitled

to under the Settlement Act does not, automatically or necessarily, eliminate the present independent claim for additional money based on the government's alleged breach of trust in distributing the funds to the Yurok Tribe.

At oral argument, it was pointed out to government counsel that if the Hoopa Valley Tribe has no standing to assert its present breach of trust claim then, even if it has a valid claim, there could be no way to assert it. Government counsel replied that this point raises a separation of powers issue, and that if the Secretary had committed a breach of trust, it was for the President to take appropriate action against the Secretary. Although such presidential action might assuage the Hoopa Valley Tribe members' emotional concerns, it would not satisfy their financial ones. It was the latter, not the former, that presumably led the Hoopa Valley Tribe to file the present suit seeking to recover damages from the United States for a breach of trust.

II

The Hoopa Valley Tribe's breach of trust claim rests primarily on its interpretation of a provision of the Settlement Act that provides:

> (4) The—
> (A) apportionment of funds to the Yurok Tribe as provided [in this title] . . . shall not be effective unless and until the Interim Council of the Yurok Tribe has adopted a resolution waiving any claim such tribe may have against the United States arising out of the provisions of this [Act].

25 U.S.C. §§ 1300i-1(c)(4)(A), -1(c)(4)(D).

The Hoopa Valley Tribe contends that, under this provision, the Yurok Tribe's right to receive its share of the fund was contingent upon the Yurok Tribe not filing suit against the United States based upon the Settlement Act, and that it forfeited that right when it filed its takings claim in 1992. The Hoopa Valley Tribe argues that the United

States committed a breach of trust by distributing the Yurok Tribe's portion of the settlement fund to the Yurok Tribe in 2007 after the tribe had executed the waiver following the loss of its takings suit. The Hoopa Valley Tribe stresses that, for many years, the Interior Department had taken the position that, once the Yurok Tribe filed its takings claim, the provisions quoted above precluded the tribe from effecting a valid waiver; and that Interior made the distribution only after it had changed its position on this issue in 2007 and permitted the Yurok Tribe to execute the waiver and receive the funds.

The Settlement Act contains a parallel provision dealing with waiver of claims by the Hoopa Valley Tribe, which states:

> (2)(A) The partition of the joint reservation as provided in this subsection, and the ratification and confirmation as provided by section 1300i-7 of this title, shall not become effective unless, within 60 days after October 31, 1988, the Hoopa Valley Tribe shall adopt, and transmit to the Secretary, a tribal resolution:
> (i) waiving any claim such tribe may have against the United States arising out of the provisions of this subchapter . . . .

25 U.S.C. § 1300i-1(a)(2)(A).

There is a critical difference between the waiver provisions covering the two tribes. The Hoopa Valley Tribe is required to execute its waiver "within 60 days after the date of the enactment" of the Act. The Yurok waiver provision, however, contains no time limit but requires only that the waiver be adopted before there is any "apportionment of funds to the Yurok Tribe."

Both waiver provisions were designed to protect the government financially by insuring that, after it had made the Settlement Act distributions to the two tribes, it would

not thereafter be subjected to damages for making those payments. The method the Settlement Act used to accomplish that objective was to require each tribe to waive such claims before it could receive its payment.

That is precisely what occurred here. The Hoopa Valley and Yurok tribes each received its share of the Settlement Act fund only after it had executed a waiver of any claims against the United States based on the Settlement Act. Under this analysis, it is irrelevant that, although the Hoopa Valley Tribe executed its waiver shortly after the Settlement Act was enacted, the Yurok Tribe did not do so until years later, after the latter had unsuccessfully asserted its takings claim against the United States. In both instances, the United States did not distribute the tribe's share of the Settlement Fund until after the tribe had waived any claim it had against the United States based on the Settlement Act.

The Hoopa Valley Tribe contends, however, that, under the Settlement Act, the government had no authority to make any distribution to the Yurok Tribe once the latter had filed its takings suit against the United States. Although the Interior Department had taken this same position over a considerable period—a fact the Hoopa Valley Tribe relies on heavily as supporting its statutory argument—Interior reexamined and changed its position in 2007. It ruled that it would distribute the Yurok Tribe's portion of the Settlement Fund if the tribe executed a waiver, which the tribe promptly did.

As Interior explained to the Chairmen of the two tribes:

> Neither the Act nor its legislative history specifies whether proceeding under one provision would preclude the Yurok Tribe from proceeding under the other, i.e., whether bringing a takings claim and providing a waiver, actions both authorized under the Act, were mutually exclusive. For a number of reasons, we conclude that the takings litigation in

Karuk Tribe did not result in the Yurok Tribe's forfeiting the benefits established in the Act. For example, the Act does not specify a time limitation, like the limited period to bring a constitutional challenge, on the ability to provide a waiver. Moreover, the Act's Yurok waiver provision is not limited solely to the constitutionally-based property claims authorized by the Act and litigated by the Yurok Tribe. The Act did not provide any contingent distribution arrangements if the Yurok Tribe chose to assert a takings claim. Fundamentally, nothing in the Act states that the Yurok Tribe's choosing to litigate its takings claim would cause the Tribe to forfeit the benefits under the Act.

Because Congress acted as a trustee in passing the Act and because the Hoopa Valley Tribe received already all of its benefits established by the Act, including its designated share of the Fund, we believe that any ambiguity in the Act should be read in favor of providing the other beneficiary, the Yurok Tribe, with its benefits established by the Act. Because the Act specifically authorized either Tribe to bring certain claims against the United States yet did not provide for an alternative distribution of benefits if a Tribe took such an action, we further believe that an interpretation of the Act that avoids penalizing a beneficiary for taking an authorized action and that avoids potentially troublesome constitutional issues to be necessary here. Thus, we believe that it would be unreasonable to read the Act to work a forfeiture of the Yurok's right to receive the monies from the Fund, and we decline to do so.

I see no reason to reject Interior's conclusion. Cf. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844 (1984).

The Hoopa Valley Tribe contends that the Yurok Tribe's waiver was invalid on the further ground it was given by the permanent Yurok Tribal Council, but that the Settlement Act authorized only the Yurok "Interim Council" to grant the waiver.

This reference to the "Interim" Tribal Council, however, is an authorization, not a restriction or limitation. Since the organization of the Yurok Tribe was a complex activity that might take considerable time, and since the inchoate Yurok Tribe might wish to

expedite the waiver to obtain its share of the settlement fund, Congress authorized the tribe's temporary governing body, the Interim Tribal Council, to execute the waiver. Once the Yurok Tribe was organized and its permanent Tribal Council established, however, the latter succeeded to the Interim Tribal Council's authority, including the authority to grant the waiver. As Interior explained in rejecting this argument:

> The Act authorized the Yurok Interim Council, an entity that ceased to exist in 1993, to provide the requisite waiver under the Act. The Act did not preclude or otherwise divest power from the permanent Yurok Council also to waive claims.

Through its breach of trust damages claim in this case, it appears that the Hoopa Valley Tribe is seeking to recover the approximately $90 million that the government paid to the Yurok Tribe as the latter's share of the Settlement Fund. The Hoopa Valley Tribe does not question that that amount accurately reflected the share of the Settlement Fund to which the Yurok Tribe was entitled under the Settlement Act. Nor does the Hoopa Valley Tribe deny that the approximate $34 million it received after executing its waiver gave it all it was entitled to under the Settlement Act.

In 1973, in the first decision in the Short litigation, the Court of Claims rejected the claim by the Hoopa Valley Tribe members that they, and they alone, were entitled to all the proceeds of the timber sales from the portion of the joint reservation they occupied. Short v. United States, 486 F.2d 561. The court held that the land that both tribes occupied constitutes a single reservation and that all the "Indians of the reservation" were entitled to share in the proceeds of the timber revenues from that land. Id. at 567–68. In subsequent decisions, both the Court of Claims and this court

reiterated those principles and standards. <u>Short v. United States</u>, 661 F.2d 1501 (Ct. Cl. 1981), 719 F.2d 1133 (Fed. Cir. 1983).

The Hoopa Valley Tribe apparently now seeks to obtain, under a breach of trust claim, the proceeds of the timber sales. This appears to be a repackaging of the tribal members' original claim—which the Court of Claims rejected more than thirty-five years ago—that they alone, and to the exclusion of the Yurok Tribe members, are entitled to the proceeds of the timber harvested on the portion of the joint reservation the Hoopa Valley Tribe occupied.

In sum, Interior did not breach any trust obligation it had to the Hoopa Valley Tribe by paying to the Yurok Tribe, under a reasonable interpretation of the waiver provision of the Settlement Act, the amount the Yurok Tribe was entitled to receive under that Act. There are no possible facts that the Hoopa Valley Tribe could show that would enable the tribe to recover on its breach of trust claim. I would affirm the judgment of the Court of Federal Claims dismissing this suit.