FRIEDMAN, Circuit Judge,
dissenting.
I would affirm the Court of Federal Claims’ grant of summary judgment for the United States, thereby dismissing the complaint, but not on the court’s ground that the appellants lack standing to bring their claims. I would affirm on the alternative ground, which the record supports, that the appellants have failed to state a claim on which relief can be granted. We may affirm the judgment of that court on any ground the record supports, whether or not that court relied upon that ground or whether the parties asserted that ground. See Granite Mgmt. v. United States, 416 F.3d 1373, 1378 (Fed.Cir.2005).
I
The rationale of the Court of Federal Claims’ lack-of-standing ruling is that the appellants “have already received their full entitlement to the Fund and thus have no ‘injury in fact.’ ” That court stated:
The Hoopa Valley Tribe ultimately received more than $34 million from the Fund, the amount determined to *1285 be Hoopa’s entitlement pursuant to the Act.
Thus, Plaintiffs cannot show that an “invasion of a legally protected interest” occurred in this matter to establish an “injury in fact.” The Hoopa Valley Tribe already received its share of the Fund in 1991; only the Yurok were entitled to monies remaining in the Fund in 2007. In short, Plaintiffs already have received the amount of the Fund to which they are entitled, and could not be injured by distribution of monies to which they have no right.
Hoopa Valley Tribe v. United States, 86 Fed.Cl. 430, 436 (2009) (app. citation omitted).
The appellants, however, do not contend that the distribution to the Yurok Tribe violated the Hoopa Valley Tribe’s distribution rights under the Settlement Act. They contend that, under that Act and 25 U.S.C. § 407, the funds distributed to the Yurok Tribe were being held by the federal government as Indian trust funds, and that the distribution the Secretary of the Interior made was a breach of that trust because it violated the Settlement Act. Although the alleged breach of trust was based on an alleged violation of the Settlement Act, that does not make the present claim any the less one for breach of trust. As the appellants stated in their brief on the merits, “Hoopa Plaintiffs seek recovery of damages resulting from a breach of trust committed by the United States.” The fact that the Hoopa Valley Tribe may have received all it is entitled to under the Settlement Act does not, automatically or necessarily, eliminate the present independent claim for additional money based on the government’s alleged breach of trust in distributing the funds to the Yurok Tribe.
At oral argument, it was pointed out to government counsel that if the Hoopa Valley Tribe has no standing to assert its present breach of trust claim then, even if it has a valid claim, there could be no way to assert it. Government counsel replied that this point raises a separation of powers issue, and that if the Secretary had committed a breach of trust, it was for the President to take appropriate action against the Secretary. Although such presidential action might assuage the Hoo-pa Valley Tribe members’ emotional concerns, it would not satisfy their financial ones. It was the latter, not the former, that presumably led the Hoopa Valley Tribe to file the present suit seeking to recover damages from the United States for a breach of trust.
II
The Hoopa Valley Tribe’s breach of trust claim rests primarily on its interpretation of a provision of the Settlement Act that provides:
(4) The—
(A) apportionment of funds to the Yurok Tribe as provided [in this title] ... shall not be effective unless and until the Interim Council of the Yurok Tribe has adopted a resolution waiving any claim such tribe may have against the United States arising out of the provisions of this [Act].
25 U.S.C. §§ 1300i — 1 (c)(4)(A), -1(c)(4)(D).
The Hoopa Valley Tribe contends that, under this provision, the Yurok Tribe’s right to receive its share of the fund was contingent upon the Yurok Tribe not filing suit against the United States based upon the Settlement Act, and that it forfeited that right when it filed its takings claim in 1992. The Hoopa Valley Tribe argues that the United States committed a breach of trust by distributing the Yurok Tribe’s portion of the settlement fund to the Yu-rok Tribe in 2007 after the tribe had exe- *1286 euted the waiver following the loss of its takings suit. The Hoopa Valley Tribe stresses that, for many years, the Interior Department had taken the position that, once the Yurok Tribe filed its takings claim, the provisions quoted above precluded the tribe from effecting a valid waiver; and that Interior made the distribution only after it had changed its position on this issue in 2007 and permitted the Yurok Tribe to execute the waiver and receive the funds.
The Settlement Act contains a parallel provision dealing with waiver of claims by the Hoopa Valley Tribe, which states:
(2)(A) The partition of the joint reservation as provided in this subsection, and the ratification and confirmation as provided by section 1300Í-7 of this title, shall not become effective unless, within 60 days after October 31, 1988, the Hoopa Valley Tribe shall adopt, and transmit to the Secretary, a tribal resolution:
(i) waiving any claim such tribe may have against the United States arising out of the provisions of this subchapter....
25 U.S.C. § 1300i — 1 (a)(2)(A).
There is a critical difference between the waiver provisions covering the two tribes. The Hoopa Valley Tribe is required to execute its waiver “within 60 days after the date of the enactment” of the Act. The Yurok waiver provision, however, contains no time limit but requires only that the waiver be adopted before there is any “apportionment of funds to the Yurok Tribe.”
Both waiver provisions were designed to protect the government financially by insuring that, after it had made the Settlement Act distributions to the two tribes, it would not thereafter be subjected to damages for making those payments. The method the Settlement Act used to accomplish that objective was to require each tribe to waive such claims before it could receive its payment.
That is precisely what occurred here. The Hoopa Valley and Yurok tribes each received its share of the Settlement Act fund only after it had executed a waiver of any claims against the United States based on the Settlement Act. Under this analysis, it is irrelevant that, although the Hoopa Valley Tribe executed its waiver shortly after the Settlement Act was enacted, the Yurok Tribe did not do so until years later, after the latter had unsuccessfully asserted its takings claim against the United States. In both instances, the United States did not distribute the tribe’s share of the Settlement Fund until after the tribe had waived any claim it had against the United States based on the Settlement Act.
The Hoopa Valley Tribe contends, however, that, under the Settlement Act, the government had no authority to make any distribution to the Yurok Tribe once the latter had filed its takings suit against the United States. Although the Interior Department had taken this same position over a considerable period — a fact the Hoopa Valley Tribe relies on heavily as supporting its statutory argument — Interi- or reexamined and changed its position in 2007. It ruled that it would distribute the Yurok Tribe’s portion of the Settlement Fund if the tribe executed a waiver, which the tribe promptly did.
As Interior explained to the Chairmen of the two tribes:
Neither the Act nor its legislative history specifies whether proceeding under one provision would preclude the Yurok Tribe from proceeding under the other, i.e., whether bringing a takings claim and providing a waiver, actions both authorized under the Act, were mutually exclusive. For a num *1287 ber of reasons, we conclude that the takings litigation in Karuk Tribe did not result in the Yurok Tribe’s forfeiting the benefits established in the Act. For example, the Act does not specify a time limitation, like the limited period to bring a constitutional challenge, on the ability to provide a waiver. Moreover, the Act’s Yurok waiver provision is not limited solely to the constitutionally-based property claims authorized by the Act and litigated by the Yurok Tribe. The Act did not provide any contingent distribution arrangements if the Yurok Tribe chose to assert a takings claim. Fundamentally, nothing in the Act states that the Yurok Tribe’s choosing to litigate its takings claim would cause the Tribe to forfeit the benefits under the Act.
Because Congress acted as a trustee in passing the Act and because the Hoopa Valley Tribe received already all of its benefits established by the Act, including its designated share of the Fund, we believe that any ambiguity in the Act should be read in favor of providing the other beneficiary, the Yurok Tribe, with its benefits established by the Act. Because the Act specifically authorized either Tribe to bring certain claims against the United States yet did not provide for an alternative distribution of benefits if a Tribe took such an action, we further believe that an interpretation of the Act that avoids penalizing a beneficiary for taking an authorized action and that avoids potentially troublesome constitutional issues to be necessary here. Thus, we believe that it would be unreasonable to read the Act to work a forfeiture of the Yurok’s right to receive the monies from the Fund, and we decline to do so.
I see no reason to reject Interior’s conclusion. Cf. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
The Hoopa Valley Tribe contends that the Yurok Tribe’s waiver was invalid on the further ground it was given by the permanent Yurok Tribal Council, but that the Settlement Act authorized only the Yurok “Interim Council” to grant the waiver.
This reference to the “Interim” Tribal Council, however, is an authorization, not a restriction or limitation. Since the organization of the Yurok Tribe was a complex activity that might take considerable time, and since the inchoate Yurok Tribe might wish to expedite the waiver to obtain its share of the settlement fund, Congress authorized the tribe’s temporary governing body, the Interim Tribal Council, to execute the waiver. Once the Yurok Tribe was organized and its permanent Tribal Council established, however, the latter succeeded to the Interim Tribal Council’s authority, including the authority to grant the waiver. As Interior explained in i’ejecting this argument:
The Act authorized the Yurok Interim Council, an entity that ceased to exist in 1993, to provide the requisite waiver under the Act. The Act did not preclude or otherwise divest power from the permanent Yurok Council also to waive claims.
Through its breach of trust damages claim in this case, it appears that the Hoopa Valley Tribe is seeking to recover the approximately $90 million that the government paid to the Yurok Tribe as the latter’s share of the Settlement Fund. The Hoopa Valley Tribe does not question that that amount accurately reflected the share of the Settlement Fund to which the Yurok Tribe was entitled under the Settlement Act. Nor does the Hoopa Valley Tribe deny that the approximate $34 million it received after executing its waiver gave it *1288 all it was entitled to under the Settlement Act.
In 1973, in the first decision in the Short litigation, the Court of Claims rejected the claim by the Hoopa Valley Tribe members that they, and they alone, were entitled to all the proceeds of the timber sales from the portion of the joint reservation they occupied. Short v. United States, 202 Ct.Cl. 870, 486 F.2d 561. The court held that the land that both tribes occupied constitutes a single reservation and that all the “Indians of the reservation” were entitled to share in the proceeds of the timber revenues from that land. Id. at 567-68. In subsequent decisions, both the Court of Claims and this court reiterated those principles and standards. Short v. United States, 228 Ct.Cl. 535, 661 F.2d 150 (1981), 719 F.2d 1133 (Fed.Cir.1983).
The Hoopa Valley Tribe apparently now seeks to obtain, under a breach of trust claim, the proceeds of the timber sales. This appears to be a repackaging of the tribal members’ original claim — which the Court of Claims rejected more than thirty-five years ago — that they alone, and to the exclusion of the Yurok Tribe members, are entitled to the proceeds of the timber harvested on the portion of the joint reservation the Hoopa Valley Tribe occupied.
In sum, Interior did not breach any trust obligation it had to the Hoopa Valley Tribe by paying to the Yurok Tribe, under a reasonable interpretation of the waiver provision of the Settlement Act, the amount the Yurok. Tribe was entitled to receive under that Act. There are no possible facts that the Hoopa Valley Tribe could show that would enable the tribe to recover on its breach of trust claim. I would affirm the judgment of the Court of Federal Claims dismissing this suit.